NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :

**MELISSA FAIRCLOTH,**         :
                                      :

**Plaintiff,**                 :

                                      :      **Civil Action No. 12-5822 (CCC)**

        **v.**               :

                                      :        **OPINION**

**MICHAEL J. ASTRUE,**       :
**COMMISSIONER OF SOCIAL**   :
**SECURITY**,              :
                                      :

**Defendant.**               :
_____:

**CECCHI, District Judge.**

## INTRODUCTION

Plaintiff Melissa Faircloth appeals the final determination of the Commissioner of the Social Security Administration (the "Commissioner") denying her disability benefits under the Social Security Act. This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). This motion has been decided based on the written submissions of the parties pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the decision of Administrative Law Judge Richard West (the "ALJ") is affirmed.

## PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") payments from the Social Security Administration ("SSA") on April 13, 2009, alleging disability beginning February 21, 2004. Plaintiff's claim was denied both initially, on November 25, 2009, and upon

reconsideration, on April 7, 2010. (Tr. 65-66.)  Thereafter, on May 3, 2010, Plaintiff filed a written request for hearing, pursuant to 20 C.F.R. 416.1429. (Tr. 77-79.)  Plaintiff's request was granted and a hearing was held before the ALJ on April 29, 2011. (Tr. 87.)  Following the hearing, the ALJ determined that Plaintiff was not disabled. (Tr. 16-36.)  On July 19, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final judgment of the Commissioner. (Tr. 1-3.)  Plaintiff subsequently initiated this action, requesting that this Court reverse or remand the ALJ's decision. (Pl.'s Br. 1.)

**FACTUAL BACKGROUND**

### I.  Personal and Employment Background

Plaintiff was forty-two years old when she first applied for SSI payments. (Pl.'s Br. 3.) She has three children that live with her who are twenty-two, twenty, and eleven years old. (Tr. 42.)  Plaintiff completed high school and was in a special education program because she had comprehension problems with the school's regular work. (Id.)  She can perform basic addition and subtraction, but she uses a calculator to make change at the grocery store. (Tr. 42-43.) Plaintiff has prior work experience being a cashier, performing clerical/data entry work, and as a secretary. (Tr. 129.)  These jobs have been classified by vocational expert Rocco Meola as light work or sedentary jobs. (Tr. 197.)

### II.  Medical Background

On August 10, 2009, Plaintiff was hospitalized at St. Joseph's Regional Medical Center because she felt like her thyroid was "getting larger." (Tr. 213.)  An ultrasound showed a diffuse goiter and a CAT scan of Plaintiff's neck showed a small non-specific cervical adenopathy, but Plaintiff was ultimately discharged. (Tr. 21.)  On August 12, 2009, Plaintiff returned to the hospital upon referral from her primary care physician, Dr. Revoredo, with symptoms of

shortness of breath, coughing, and wheezing. (Tr. 222.)  She was seen by Dr. Nilesh Patel and Dr. John Kashani. (Tr. 213-14.)   Plaintiff was discharged on August 13, 2009 and the radiologist's conclusions from this visit note that her heart and lungs were clear. (Tr. 216.)  Upon discharge, Dr. Espindola reiterated the existence of Plaintiff's diffuse goiter and shortness of breath and wheezing. (Tr. 222-23.)

Later that year, on November 5, 2009, Plaintiff met with Dr. Solomon Miskin for a consultative psychological examination. (Tr. 225.)   Dr. Miskin noted that Plaintiff was "cooperative, coherent, and compliant" and presented no observable evidence of a thought disorder. (Tr. 226.)   At this evaluation, Dr. Miskin diagnosed Plaintiff with "bipolar disorder, chronic, mixed, without psychotic features, [not otherwise specified; hereinafter "NOS"]; learning disability, NOS; panic attacks, NOS; with moderate multiple medical problems, and a GAF of 55-60." (Tr. 22, 227.)

On November 13, 2009, Plaintiff met with Dr. Alan Friedman for an orthopedic examination. (Tr. 228.)  Plaintiff complained of lower back and knee pain and told Dr. Friedman that she had been using a cane to walk since an accident she was involved in three years prior. Plaintiff also told Dr. Friedman that she suffered from arthritis. (Id.)  Dr. Friedman concluded that Plaintiff had possible right lumbosacral radiculopathy but no other injury in her back.  Dr. Friedman also found that Plaintiff had arthritis in her right knee and should continue with the use of her cane. (Tr. 229.)  On the same day, a report by Dr. Samuel Wilchfort noted that Plaintiff's spine was normally aligned but that there was mild narrowing at L5-S1. (Tr. 230.)

On November 24, 2009, Dr. Clara Castillo-Velez, a non-examining state agency medical consultant, noted that Plaintiff was not under psychiatric treatment or taking psychiatric medications and concluded that Plaintiff's depression was "non-severe." (Tr. 22, 245.)  On the

same date, a case analysis report noted that Plaintiff did not mention any knee problems and concluded that Plaintiff had no "severe" musculoskeletal impairment. (Tr. 22, 247.)

The next year, on March 9, 2010, Dr. Samuel Wilchfort concluded that Plaintiff's lungs were clear. (Tr. 260.)  On March 10, 2010, Dr. Anees Khan evaluated Plaintiff after a referral from Dr. Revoredo and concluded that Plaintiff suffered from chronic bronchial asthma, but noted that her lung volume, airway resistance, and diffusing capacity were within normal limits. (Tr. 315, 317.)  On March 11, 2010, Dr. Changaramk Sivadas met with Plaintiff for a consultative examination. (Tr. 255.)  Dr. Sivadas conducted a physical examination and concluded that Plaintiff had chronic bronchial asthma but had required no emergency visits since August of 2009. (Tr. 257.)  Additionally, Dr. Sivadas found that Plaintiff suffered from degenerative joint disease in the knees and possibly the lower back, with worse problems in the right knee, atypical chest pain, and depression. (Id.)

On March 18, 2010, Dr. Amy Brams, a nonexamining state agency medical consultant, reiterated Dr. Castillo-Velez's findings in a separate case analysis report. (Tr. 264.)  Dr. Brams noted that Plaintiff alleged "no new mental limitations [and] no new psych[ological] impairment." (Id.)

In a report dated April 20, 2010, Dr. Revoredo noted that Plaintiff was seen at two visits, the most recent being February 15, 2010. (Tr. 252.)  Dr. Revoredo diagnosed Plaintiff with a herniated disk at L4-L5 and chronic bronchial asthma, but concluded that her ability to do work-related activities would be better assessed by other doctors. (Tr. 252-53.)

Dr. Howard Goldbas, a nonexamining state agency medical consultant, completed a residual functional capacity ("RFC") assessment, dated April 5, 2010. (Tr. 266-73.)  In this report Dr. Goldbas concluded that Plaintiff could occasionally lift and/or carry twenty pounds

and could frequently lift and/or carry ten pounds. (Tr. 267.) Dr. Goldbas also concluded that Plaintiff could stand and/or walk, with standard breaks, for at least two hours out of an eight hour workday and could sit, with standard breaks, for about six hours in a typical workday. (Id.) Dr. Goldbas found that Plaintiff had an unlimited (other than as shown for lifting and carrying) ability to push and/or pull during her workday. (Id.) He also found that Plaintiff could not kneel or crawl, but that she could occasionally climb, balance, stoop, and crouch as was necessary. (Tr. 268.) Dr. Goldbas concluded that Plaintiff had no manipulative, visual, or communicative limitations. (Tr. 269-70.) He recommended that Plaintiff avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 270.) However, he found that Plaintiff only needed to avoid concentrated exposure to extreme hot, extreme cold, wetness, humidity, and hazards such as machinery and heights. (Id.) Additionally, Dr. Goldbas found that Plaintiff could have unlimited exposure to noise and vibrations. (Id.)

In an unsigned medical opinion dated May 14, 2010, Plaintiff was seen for a follow-up of her asthma and depression. (Tr. 314.) This report concluded that Plaintiff suffered from depression. (Id.)

On August 8, 2010, Plaintiff was admitted to St. Joseph's Regional Medical Center complaining of chest pain and dizziness. (Tr. 278.) Dr. Thierman diagnosed Plaintiff with a left pleural effusion and fatty infiltration in her liver and suggested a follow-up exam. (Tr. 298.)

On September 8, 2010, Nurse Robert Tirado evaluated Plaintiff after a referral from Dr. Revoredo for treatment of her depression and anxiety. (Tr. 305.) At this appointment, Nurse Tirado opined that Plaintiff suffered from recurrent depression with psychotic features, bronchial asthma, hypertension, herniated spinal discs, and high cholesterol. (Tr. 305, 335-37.) Plaintiff missed her October 18, 2010 monitoring appointment. (Tr. 302.)

On November 1, 2010, Plaintiff was seen again by Nurse Tirado and noted feeling a bit better since her last appointment. (Tr. 300.) Nurse Tirado noted Plaintiff's depression and anxiety, but concluded that she seemed less depressed with her current medication regime. (Tr. 301.) Nurse Tirado reiterated his previous diagnosis of Plaintiff's recurrent depression, with psychotic features, hypertension, herniated discs, bronchial asthma, and high cholesterol. (Id.)

From August 12, 2009 through November 23, 2010, Plaintiff was seen at various visits with her primary care physician, Dr. Revoredo. (Tr. 24.) These visits were mostly follow-ups regarding asthma, gastroesophageal reflux disease (GERD), depression, and back pain. Dr. Revoredo stated that many of Plaintiff's symptoms may be the result of her chronic bronchial asthma. (Id.) On April 7, 2011, Dr. Revoredo completed a mental capacity assessment for Plaintiff and concluded that she suffered from major depression. (Tr. 363.) On April 18, 2011, Dr. Revoredo completed a RFC questionnaire for Plaintiff and concluded that she suffered from anxiety, depression, and bronchial asthma. (Tr. 367.) Dr. Revoredo noted that Plaintiff's symptoms were often severe enough to interfere with her ability to perform simple tasks and that she would need additional breaks other than those typically offered in an eight hour workday, but that this assessment should be validated by a psychiatrist. (Id.) He also stated that Plaintiff was capable of sitting and standing or walking for up to sixty minutes at a time, could sit and stand or walk for up to four hours in a typical workday, and could lift and carry ten pounds frequently and twenty pounds occasionally. (Id.) Last, Dr. Revoredo stated that Plaintiff could use her arms for reaching for 50% of a typical day, but was able to use her hands and fingers for grasping and twisting objects and fine manipulation for 100% of a typical work day. (Id.)

## DISCUSSION

### A. LEGAL STANDARDS

A.      **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992); See also 42 U.S.C. §405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)). However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 Fed. Appx. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)). Where the ALJ has rejected competent medical evidence, the ALJ must adequately explain his reasons and provide the rationale behind his decision. See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). Given the totality of the evidence,

including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the ALJ's decision is adequately supported. See Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Generally, medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. §416.927. Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

**B.      Determining Disability**

Pursuant to the Social Security Act, to receive SSI payments, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …" Id. Impairments that affect the claimant's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations. 20 C.F.R. § 416.969a(a)-(b); Sykes

v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).  All other impairments are considered nonexertional.

20 C.F.R. § 416.969a(a), (c); Sykes, 228 F.3d at 263.  Decisions regarding disability will be

made individually and will be based on evidence adduced at a hearing. Sykes, 228 F.3d at 262

(citing Heckler v. Campbell, 461 U.S. 458, 467, 103 S. Ct. 1952, 76, L.Ed.2d 66 (1983)).

Congress has established the type of evidence necessary to prove the existence of a disabling

impairment by defining a physical or mental impairment as "an impairment that results from

anatomical, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).

The SSA follows a five-step sequential evaluation to determine whether a claimant is

disabled. 20 C.F.R. §§ 404.1520, 416.920.  The evaluation will continue through each step unless

it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one, two, and

four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263.

Neither party bears the burden at step three. Id. at 263, n.2.

At step one, the claimant's work activity is assessed, and the claimant must demonstrate

that he is not engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  An individual is engaging in substantial gainful activity if he is doing

significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1572, 416.972.  If the

claimant is engaged in substantial gainful activity, he will be found not disabled and the analysis

will stop, regardless of claimant's medical condition, age, education, or work experience. 20

C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaging in substantial gainful

activity, the analysis proceeds to the second step.  At step two, the claimant must show he has a

medically determinable "severe" impairment or a combination of impairments that is "severe."

20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. See Leonardo v. Comm'r of Soc. Sec., No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010). If the claimant does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the claimant's impairment matches or is equivalent to a listed impairment from the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments are the same or equivalent to those listed, the claimant is per se disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). At this point, the ALJ must set forth the reasons for his findings. Burnett, 220 F.3d at 119. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. Id. Simple conclusory remarks will not suffice and will leave the ALJ's decision "beyond meaningful judicial review." Id.

When the claimant does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether the claimant's residual functioning capacity ("RFC") enables him to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(ix), 416.920(a)(4)(iv). This step involves three sub-steps: (1) the ALJ must make specific findings of fact as to the claimant's RFC; (2) the ALJ must make findings as to the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must

compare the RFC to the past relevant work to determine whether the claimant has the capability to perform the past relevant work. Burnett, 220 F.3d at 120. The SSA often classifies RFC and past work by physical exertion requirements from "sedentary" to "very heavy work." See id.; 20 C.F.R. §§ 404.1567, 404.967. If the claimant can perform his past work, the ALJ will find that he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant lacks the RFC to perform any work he has done in the past, the analysis proceeds to the fifth and final step.

At step five, the Commissioner must show that, based on the claimant's RFC and other vocational factors, there is a significant amount of other work in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). During this final step, the burden lies with the government. See Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005); Sykes, 228 F.3d at 263. If the Commissioner cannot show there are a significant number of other jobs for the claimant in the national economy, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(ix), 416.920(a)(4)(iv).

**B. Summary of the ALJ's Findings**

After reviewing all of the evidence in the record, the ALJ determined that Plaintiff was not disabled and denied her claim for SSI benefits. (Tr. 32.) The ALJ arrived at his decision by following the required five-step sequential analysis.

**i. Steps One and Two**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2009, the application date. (Tr. 25.) At step two, the ALJ found that Plaintiff had the following severe impairments pursuant to 20 C.F.R. 416.920(c): asthma; degenerative disc disease; internal derangement of the knee; goiter/boils; depression; and obesity. (Id.)

**ii. Step Three**

The ALJ continued to step three, where he concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (the "Listings") (Tr. 26.)

The ALJ considered each of the severe impairments detailed above in making his determination at step three. Specifically, in evaluating Plaintiff's asthma, the ALJ concluded that the asthma did not meet or equal Listings 3.02 or 3.03. In so finding, the ALJ noted that Plaintiff has not visited an emergency room or been hospitalized for asthma since August 2009. (Id.) Plaintiff also had a normal Pulmonary Function Test ("PFT") on March 10, 2010. (Id.) With regard to Plaintiff's degenerative disc disease, the ALJ noted that the record documented no nerve root or spinal cord compromise, no evidence of spinal arachnoiditis, and no lumbar spinal stenosis resulting in pseudoclaudication that would meet or equal Listing 1.04. (Id.) In evaluating Plaintiff's internal derangement of the right knee and arthritis of the knees, the ALJ relied on the fact that Plaintiff documented no inability to ambulate effectively in his conclusion that Plaintiff did not meet or equal Listings 1.02A or 1.03. (Id.) With respect to Plaintiff's goiter, the ALJ noted that Plaintiff had not seen an endocrinologist yet, denied symptoms associated with goiters, and had a normal thyroid gland, failing to document hyperparathhyroidism or hypoparathyroidism as defined in Listings 9.03 and 9.04. (Tr. 26.) Similarly, the ALJ noted that Plaintiff's boils did not meet or equal Listings 8.02-8.06 because there was little evidence in the record concerning the boils and Plaintiff's medical reports did not mention significant skin conditions. (Id.)

With respect to Plaintiff's mental condition, the ALJ determined that none of Plaintiff's mental impairments met or medically equaled the criteria in Listing 12.04. (Id.) In this finding, the ALJ specifically considered both the "paragraph B" and "paragraph C" criteria in the Listing.

(Tr. 26-27.)  Last, in evaluating Plaintiff's obesity, the ALJ noted that obesity does not have a specific Listing, but subsequently concluded that even when Plaintiff's obesity is considered in conjunction with her other impairments, Plaintiff did not meet or equal the criteria of any of the Listings. (Tr. 27.)

### v.    Step Four

At step four, the ALJ determined that Plaintiff had the following RFC:

> lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk up to 2 hours in an 8-hour day; sit up to 6 hours in an 8-hour day. The claimant cannot climb ladders, ropes, or scaffolds, and cannot kneel or crawl. She can perform all other postural functions occasionally. She must avoid close proximity to dust, fumes, and similar occupational irritants. She must avoid concentrated exposure to extreme cold, heat, wetness, and humidity. She can understand, remember, and carry out simple instructions and can have occasional interaction with the general public, coworkers, and supervisors; she can have occasional changes in essential job functions and occasional exercise of independent decision-making. She must have no workplace travel. (*Id.*)

In making this finding, the ALJ considered all of Plaintiff's symptoms and engaged in the two-step process required by the legal framework set forth above, whereby he first determined whether Plaintiff suffered from a physical or mental impairment that could be reasonably expected to produce her pain or symptoms, and then considered whether the "intensity, persistence, or functionally limiting effects of the [Plaintiff's] symptoms" limited her ability to function. (Tr. 28.)  The ALJ concluded that Plaintiff's impairments could be expected to cause her symptoms; however, he also determined that the Plaintiff's statements about these symptoms were not credible to the extent that they conflicted with the RFC assessment. (Id.)  In making the above determination, the ALJ separately enumerated his reasoning with respect to each of Plaintiff's ailments.

The ALJ noted with respect to Plaintiff's asthma that she was hospitalized in August of 2009, but he also considered that there were no hospital or emergency room visits after this point

and that Plaintiff's PFT in March of 2010 was normal. (Id.)  The ALJ also took note of Plaintiff's smoking habits in this analysis. (Id.)

With respect to Plaintiff's back and knee pain, the ALJ noted that at an November 13, 2009 examination, Plaintiff had "full motion of the cervical and lumbar spines and upper and lower extremities; 5/5 strength in the upper and lower extremities; negative straight leg raising bilaterally; and normal fine and gross motor coordination." (Id.)  The ALJ considered the findings of Dr. Friedman and Dr. Sivadas and was ultimately persuaded by the fact that Plaintiff had "no motor or sensory deficits, normal DTR's, and normal functioning of the upper extremities." (Tr. 28.) The ALJ also considered the evidence that Plaintiff took public transportation to her interview and was able to ambulate five blocks using her cane. (Id.)

With respect to Plaintiff's moderate sized goiter from August 2009 and hyperactive thyroid, the ALJ mentioned that Plaintiff had not followed up with an endocrinologist and denied symptoms traditionally associated with these ailments. (Id.)  When Plaintiff visited the emergency room on April 8, 2010, a CAT scan showed that her thyroid gland was normal. (Tr. 29.)

When considering Plaintiff's mental ailments, the ALJ noted that Plaintiff has been depressed since her daughter's death in 1998 and that she told Dr. Sivadas that her father's death in 2009 only exacerbated this depression. (Id.)  However, the ALJ cited Dr. Miskin's consultative examination and the fact that the Plaintiff drove to her appointment with Dr. Miskin as counter-evidence of the severity of Plaintiff's depression. (Id.)  The ALJ also cited to Plaintiff's testimony about her personal habits and daily living activities. (Id.)  The ALJ noted

that although Plaintiff was taking antidepressants prescribed by Dr. Revoredo, she still had not had any mental health treatment. (Id.)[1]

In evaluating Dr. Revoredo as Plaintiff's primary care physician, the ALJ noted that Dr. Revoredo is not a mental health specialist. (Id.) Dr. Revoredo found that Plaintiff would not be able to maintain a schedule or keep regular attendance, and the ALJ concluded that Dr. Revoredo did not provide an analysis for this opinion. (Id.) The ALJ used Plaintiff's testimony concerning her ability to live independently, take care of her child, and perform activities associated with daily living in ultimately diverging from Dr. Revoredo's conclusion that Plaintiff can never be outside or coexist among others. (Id.) The ALJ also noted that Plaintiff took public transportation to her appointment with Dr. Sivadas, drove to her appointment with Dr. Miskin, and was able to maintain concentration by playing her PlayStation for most of her day. (Tr. 29.) The ALJ noted that he agreed with Dr. Revoredo's findings with the exception of Dr. Revoredo's conclusion concerning Plaintiff's inability to be outside or coexist with other people at all. (Id.) The ALJ gave this conclusion "lesser" weight in his analysis. (Id.)

In continuing to evaluate Plaintiff's mental health impairments, the ALJ noted that Plaintiff did not mention her symptom of seeing visions of her dead relatives in her appointment with Dr. Miskin. (Id.) He also noted that Plaintiff's medication dosage for her mental health ailments had been modest. (Id.) The ALJ was persuaded by Plaintiff's previous employment as a mail sorter, a cashier, a customer service representative, and by her conversation with Dr. Miskin where she said she had everyday reading skills. (Tr. 30.) A disability interviewer also noted that

---

[1] Dr. Revoredo referred Plaintiff to St. Joseph's Mental Health Clinic, where she was seen on September 8, 2010 and was diagnosed with "major depressive disorder, recurrent, with psychotic features; rule out personality disorder, NOS with a GAF of 60." (Tr. 29.) Subsequently, on November 1, 2010, Plaintiff reported being less depressed and that she was feeling better and at this appointment the clinic found "slight depression, sadness, and anxiety and that [Plaintiff] was slightly hostile and challenging." (Id.)

"[Plaintiff] had no difficulties in all areas, including reading, writing, concentrating, sitting, standing, and walking." (Id.)  With respect to Plaintiff's obesity, the ALJ concluded that even when paired with Plaintiff's other ailments, the obesity did not result in a disabling limitation. (Id.)

Finally, the ALJ noted that Dr. Revoredo's opinion on an April 18, 2011 questionnaire regarding Plaintiff's inability to perform any work at all deserved "lesser" weight because it was inconsistent with both Plaintiff's testimony and the findings of other examiners. (Id.)  The ALJ also decided that Dr. Goldbas's opinion deserved "greater" weight. (Id.)

In sum, after reviewing the record evidence detailed above, the ALJ concluded that, given Plaintiff's RFC, she was unable to perform her past relevant work as a cashier, data entry worker and secretary because such jobs are semi-skilled and involve frequent interaction with others.

### iv.    Step Five

Having determined Plaintiff's RFC and concluded that she was unable to perform any of her past relevant work, the ALJ then proceeded to step five of the analysis.  At step five, the ALJ found that a significant number of other jobs existed in the national economy that Plaintiff was capable of performing. (Tr. 31.)  The ALJ, through the vocational expert, concluded that Plaintiff was capable working as an inspector and hand packager, an assembler of mechanical pencils and pens, an eyelet machine operator, and a tag machine operator. (Id.)  These jobs exist in the local economy in numbers of 900 and in the national economy in numbers of 351,000. (Id.)  Accordingly, the ALJ concluded that the Plaintiff retained the RFC to perform these sufficiently available jobs and was therefore not disabled pursuant to 20 C.F.R. § 416.920(g). (Id.)

### C.  Analysis

Plaintiff argues that the ALJ erred in three respects. First, Plaintiff asserts that the ALJ erred in determining Plaintiff's RFC because he did not afford appropriate weight to the opinion of her treating physician, Dr. Revoredo. Second, Plaintiff asserts that the ALJ's determination regarding her credibility is not supported by substantial evidence. Finally, Plaintiff contends that the aforementioned errors resulted in an incomplete hypothetical question being posed to the vocational expert in step five of the ALJ's analysis.

**1. The ALJ's RFC Analysis Was Supported by Substantial Evidence with Respect to Plaintiff's Mental and Physical Limitations**

In determining Plaintiff's RFC, the ALJ gave lesser weight to the opinion of Plaintiff's treating physician Dr. Revoredo than that of (1) Dr. Miskin with respect to Plaintiff's mental limitations and (2) Dr. Goldbas with respect to Plaintiff's physical limitations, whose opinion he specifically afforded greater weight. Plaintiff argues that the opinion of Dr. Revoredo should have been given controlling weight or deference because he was her treating physician. Plaintiff further asserts that the ALJ's designations of "lesser" and "greater" weight in his analysis of the opinions of Dr. Revoredo and Dr. Goldbas were unclear in that they do not describe the specific amount of weight afforded to each opinion. (Pl.'s Br. 18, 25.) In response, the Commissioner argues that Plaintiff's argument inappropriately focuses on isolated phrases within the ALJ's opinion, rather than considering his detailed analysis as a whole. (Def.'s Br. 11.) The Commissioner further asserts that the ALJ's analysis was largely consistent with Dr. Revoredo's opinions, Plaintiff does not identify any specific errors in the ALJ's findings, and likewise, Plaintiff does not detail which sections of Dr. Revoredo's evaluations should have been given more weight. (Def.'s Br. 11.)

The Court agrees with the Commissioner. The ALJ engaged in a detailed analysis of all of the doctor's opinions, ultimately concluding that Dr. Revoredo's opinion was to be given lesser weight.

Turning first to Plaintiff's mental limitations, the Court finds that the ALJ appropriately weighed and considered the relevant medical evidence in determining the weight given to Dr. Revoredo's opinion. The ALJ specifically explained his reasoning for giving parts of the opinions of Dr. Revoredo "lesser" weight, stating that Dr. Revoredo is not a mental health expert and noting that his opinion that Plaintiff would be unable to follow a schedule and maintain attendance was "inconsistent with the claimant's treatment history, her ability to live independently and care for her son, and her performance of ADL's." (Id.). (Tr. 29.) In addition, the ALJ noted that Dr. Revoredo referred Plaintiff to a mental health clinic, and the clinic noted her improvement at a follow-up appointment. (Id.)

Further, the ALJ noted the contrary medical and nonmedical evidence in Dr. Miskin's evaluation and Plaintiff's own testimony. Specifically, Dr. Miskin's analysis noted that Plaintiff had no history of mental health treatment, seemed to be adequately taking care of herself, and did not report to him about her later assertion that she saw and talked to dead relatives. (Id.) Dr. Miskin further stated that Plaintiff's medication dosage was relatively mild. (Id.) In addition, the ALJ found no substantiation for Dr. Revoredo's conclusion that Plaintiff would be unable to maintain a schedule or attendance and could not be outside or among others, as this was directly contradicted by Plaintiff's admission that she took public transportation and drove to some of her medical appointments. (Tr. 29.) The ALJ further noted the fact that Plaintiff lives with and takes care of her son and can perform activities of daily living including cooking and cleaning. (Tr. 54.) Accordingly, because the ALJ provided detailed support, including Plaintiff's own

testimony and contradictory medical opinions, in weighing Dr. Revoredo's conclusions, his finding that Dr. Revoredo's opinion deserved lesser weight with respect to Plaintiff's mental limitations was supported by substantial evidence and shall be affirmed.

Turning to Plaintiff's physical limitations, the ALJ likewise provided significant support for the weight afforded to Dr. Revoredo's opinion. The ALJ stated in his RFC analysis that lesser weight would be given to the opinion of Dr. Revoredo, and "[g]reater weight is given to Dr. Goldbas's opinion under 20 C.F.R. [§] 416.927." (Tr. 30.) In making this determination, the ALJ cited to orthopedic and internal medicine exams which contradict Dr. Revoredo's conclusion that Plaintiff is unable to do any work. (Tr. 30.) Additionally, the ALJ noted that many of Plaintiff's visits to Dr. Revoredo were for follow-ups related to conditions that were under control, including asthma, GERD, depression and back pain. (Id.) Further, the ALJ found that Dr. Revoredo's notes did not mention a skin problem that would be relevant to Plaintiff's complaints of boils. (Id.) Similar to his discussion of Plaintiff's mental limitations, the ALJ specifically enumerated which of Dr. Revoredo's conclusions he afforded lesser weight and provided an adequate explanation.[2] Because the ALJ supported his findings with reasoned

---

[2] Likewise, because adequate explanation was given for affording the opinion of Dr. Revoredo lesser weight, the ALJ's reasoning for giving the contrary opinion of state physician Dr. Goldbas greater weight is supported by the same evidence. The ALJ was entitled to rely on Dr. Goldbas's opinion, which mirrored Dr. Revoredo's opinion in many respects, in his determining Plaintiff's physical RFC. Moreover, the ALJ cited to the relevant factors for the analysis of a nontreating physician's medical opinion found in 20 C.F.R. § 416.927. Generally, medical opinions consistent with other evidence are given more weight while those which are inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. See 20 C.F.R. §416.927; Brown v. Astrue, 649 F.3d 193, 196-97 (3d. Cir. 2011); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356,361 (3d Cir. 2011).

analysis, his conclusions with regard to the weighing of Dr. Revoredo's opinions on Plaintiff's physical limitations are affirmed.[3]

Finally, the Court finds that the ALJ's use of the terms lesser and greater in discussing the weight afforded to the doctor's opinions was appropriate. As the Third Circuit noted in Burnett v. Comm'r of Social Sec., 220 F.3d 112, 120 (3d Cir. 2000), an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." Plaintiff has not presented any caselaw which indicates that more specifically quantifiable terms are required. Accordingly, the Court finds that the ALJ's use of these terms is affirmed.

In sum, the ALJ properly explained his reasoning for affording lesser weight to certain portions of Dr. Revoredo's opinion. Because the ALJ adequately considered the relevant medical and nonmedical evidence in the record and has justified his findings with legitimate analysis, the ALJ's findings with respect to Plaintiff's RFC are affirmed.

### 2. The ALJ's Assessment of Plaintiff's Credibility

In assessing a Plaintiff's credibility, objective medical evidence determines the existence of impairments that "could reasonably be expected to produce pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A). If a medically determinable impairment exists, an ALJ must analyze the intensity and persistence of the Plaintiff's symptoms with respect to that impairment. See 20 C.F.R. § 416.929(c)(1). A list of factors is provided to aid in this analysis. See 20 C.F.R. § 416.929(c)(3). Plaintiff argues that the ALJ erred in assessing her credibility by: (1) substituting his opinion for that of a medical expert; (2) inappropriately considering evidence of her smoking;

---

[3] Plaintiff's final argument regarding the weight given to Dr. Revoredo's opinion concerns the ALJ's disagreement with Dr. Revoredo's opinion that Plaintiff was "unable to do any work." However, the ALJ's conclusion is supported by the contrary evidence discussed above regarding Plaintiff's mental and physical limitations. (Tr. 30.) The ALJ provided a detailed analysis of his reasoning in reaching this conclusion. (Id.)

(3) failing to consider each of her limitations in evaluating her credibility; and (4) finding that her testimony was not credible to the extent that it deviated from his RFC. For the reasons that follow, the Court finds that the ALJ's assessment of Plaintiff's credibility was supported by substantial evidence.

As discussed, Plaintiff first argues that the ALJ substituted his opinion for that of a medical expert by concluding that Plaintiff could maintain concentration. (Pl.'s Br. 28.) In response, the Commissioner argues that the ALJ's finding was supported by the evidence and that consideration of Plaintiff's smoking was relevant and reasonable. (Def.'s Br. 14-15.)

The Court agrees with the Commissioner that the ALJ did not substitute his opinion for that of a medical expert. Deference to an ALJ's inferences is proper when the inferences are supported by substantial evidence. See Smith v. Astrue, 2012 U.S. Dist. LEXIS 26676, at *14 (citation omitted). Moreover, the Third Circuit has cautioned that "[i]n the process of reviewing the record for substantial evidence, we may not weigh the evidence or substitute [our own] conclusions for those of the fact-finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The record in this case contains specific testimony from Plaintiff regarding her ability to engage in daily activities which require concentration. For example, Plaintiff discussed her video game playing at length in her testimony, admitting that she engages in this activity "to try and keep alert." (Tr. 49-53.) Plaintiff also mentioned that "[she] plays the game all day long for hours and hours at a time." (Tr. 51.) In concluding that Plaintiff was able to maintain concentration, the ALJ also considered evidence of Plaintiff's mental health and functioning provided by other medical sources, including Dr. Castilla-Velez and Dr. Miskin. (Tr. 22;29.) Accordingly, the ALJ's finding regarding Plaintiff's ability to maintain concentration was supported by the record.

Plaintiff's second argument that the ALJ improperly considered her smoking habits in connection with evaluating her asthma likewise fails. Plaintiff testified that she was a smoker and discussed her habits with Dr. Revoredo. (Tr. 63.) As this testimony was part of the record, the ALJ appropriately considered Plaintiff's statements in conjunction with the other relevant evidence concerning her asthma.[4]

Plaintiff further argues that the ALJ failed to consider each of her limitations in evaluating her credibility. (Pl.'s Br. 29.) In response, the Commissioner correctly asserts that the ALJ considered all of the relevant evidence in the record when reaching his credibility assessment. (Def.'s Br. 15-16.) The ALJ cited at length to various medical opinions and provided substantial reasoning for his findings.

Finally, Plaintiff argues that the ALJ erred in finding that her testimony regarding her symptoms was not credible to the extent that it deviated from his RFC. However, even when language such as "inconsistent with the above-listed RFC assessment" is used, it is not evidence that the ALJ's determination was incorrect. Doherty v. Comm'r of Soc. Sec., Civil No. 11-03701 (JAP), 2012 WL 4507831, at *10 (D.N.J. Sept. 28, 2012). Rather, the Court must examine whether the ALJ considered the record as a whole. See id. Here, it is clear that the ALJ has done so. Indeed, the ALJ cited specific examples of medical and nonmedical evidence throughout his lengthy analysis and ultimately rejected portions of Plaintiff's testimony which conflicted with other evidence he found to be more persuasive.

---

[4] Although Plaintiff is correct that the ALJ misstated the last date of Plaintiff's marijuana use (finding that she last smoked two days, rather than two years, prior to the proceeding, this error had no effect on his finding regarding her credibility).

In sum, the ALJ's consideration of Plaintiff's video game playing and smoking was relevant and his findings indicate that he considered all relevant evidence in assessing Plaintiff's credibility.  Accordingly, the ALJ's findings with respect to Plaintiff's credibility are affirmed.

### 3. The ALJ's Hypothetical Question and Step Five Determination

Plaintiff's final argument concerns the hypothetical question posed to the vocational expert in step five of the disability analysis.  Specifically, Plaintiff argues that the hypothetical question was incorrect because of the other alleged errors in the ALJ's analysis discussed above. (Pl.'s Br. 31.)  In addition, Plaintiff argues that the hypothetical question posed to the vocational expert was incomplete because it did not consider all of Dr. Revoredo's findings. (Id.)

In light of this court's findings regarding the sufficiency of the ALJ's determinations, particularly with regard to Dr. Revoredo's opinion, the Court likewise finds that the hypothetical question was adequate and the ALJ's step five conclusion was supported by substantial evidence. This Court is not persuaded that the ALJ committed any error which resulted in an incomplete hypothetical question to the vocational expert or inadequate consideration of the evidence.

## CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed.  An appropriate order accompanies this opinion.

**DATED:** September 6, 2013

_____*s/Claire C. Cecchi*_____
**HON. CLAIRE C. CECCHI**
**United States District Judge**